## CARTER v. ENGLISH.

(Circuit Court of Appeals, Ninth Circuit. October 25, 1926.)

No. 4838.

**Internal revenue ⊂⇒8(7).**

Where will gave property to testator's widow and daughter as joint tenants, and not tenants in common, *held*, on death of widow, one-half of such property was not subject to estate tax, under Revenue Act, §§ 201, 202 (Comp. St. §§ 6336½b, 6336½c), in view of Civ. Code Cal. §§ 683, 685.

At Law. Action by Edith Ames English, as executrix of the estate of Annie B. Ames, deceased, and individually, against John P. Carter, formerly United States Collector of Internal Revenue. Judgment for plaintiff, and defendant brings error. Affirmed.

Samuel W. McNabb, U. S. Atty., and Donald Armstrong, Asst. U. S. Atty., both of Los Angeles, Cal., for plaintiff in error.

Claude I. Parker, of San Francisco, Cal., and Ralph W. Smith, of Sacramento, Cal., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. This is a writ of error to review a judgment in favor of the defendant in error and against the plaintiff in error. The agreed facts are as follows:

Charles L. Ames died on February 24, 1915, leaving a will executed on June 19, 1909. In the will he devised all his property, real, personal, and mixed, in fee-simple title and wheresoever situated, to his wife, Annie B. Ames, and to his daughter, Edith Ames English (defendant in error here), "to be held by them as joint tenants and not as tenants in common, to them and the survivors of them and the heirs of such survivors forever." Annie B. Ames, the wife, died on May 15, 1918. Federal estate taxes on one-half the value of the joint estate were assessed against the gross estate of Annie B. Ames. The executrix paid the tax under protest and brought this action to recover.

Section 201 of the Revenue Act of September 8, 1916 (Estate Tax Act, 39 Stat. 777 [Comp. St. §§ 6336½b, 6336½c]), provides:

"That a tax (hereinafter in this title referred to as the tax), equal to the following percentages of the value of the net estate, to be determined as provided in section two hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or nonresident of the United States: One per centum of the amount of such net estate not in excess of $50,000."

Section 202 provides:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated: * * * (c) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent."

Stated in a short way, the position of the government is that, under the pertinent sections, the tax is an excise and of a class of indirect taxes known as death duties, which may be imposed either with respect to the cessation of decedent's interest in property which in life he owned, or with respect to the receipt by the beneficiary.

By section 685 of the Civil Code of California an interest in common is one owned by several persons not in joint ownership or partnership, and by section 683 a joint interest is owned by several persons in equal

shares by a title created by a single will or transfer when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants.

It has been held that under the Civil Code of the state, as at common law, in joint tenancy the title to the joint property does not pass to and vest in the survivor upon the death of his cotenant, but each tenant is seized of the whole estate from the first; that no change occurs in his title on the death of his cotenant; that it simply "remains to him" and comes wholly from the original grant, so that, after the death of one, the other, in pleading his title, can allege conveyance by the original grantor to himself without mentioning his cotenant. Estate of Gurnsey, 177 Cal. 211, 170 P. 402. That being the law, title to the property of Charles L. Ames did not vest in the survivor (Edith) upon the death of her cotenant (Annie) ; nor did it descend to her from her cotenant, for it had already vested in her by and at the time of the death of Charles L. Ames. Washburn on Real Property, §§ 851–861; Hannon v. Southern Pacific Co:, 12 Cal. App. 350, 107 P. 335; 7 Cal. Jur. 336; Warvelle on Real Property, § 110. It was also held in the Estate of Gurnsey, supra, that the Legislature could not impose an inheritance tax upon the estate of a joint tenant who died after the passage of the taxing amendment to the inheritance tax act, if the joint tenancy had been created before the enactment.

Plaintiff in error, while not controverting the force of the rule, argues that, as Mrs. Ames at the time of her death "held jointly" with Edith, the language of sections 201 and 202, supra, clearly includes excise taxes upon transmission of title as a result of Mrs. Ames' death. The position seems to us to be not only inconsistent with the status of the right, as defined by the California court, but also as in conflict with the principle that, in the absence of clear declaration that a statute imposing a tax shall be retroactive, it will not be held to have such an effect.

In Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 23 A. L. R. 1454, by a deed of April 21, 1915, Augusta Dickel delivered to the Detroit Trust Company securities of the value of $1,000,000 with all their unmatured coupons, and the proceeds to be derived therefrom, both principal and income, in trust to invest and reinvest, and to pay the net income for life to Victor E. Shwab or on his written order. Upon the death of Shwab the net income was directed to be paid to six beneficiaries, his children. During the life of Shwab the income was to be paid to him or his order, and after his death the trust was to continue during the lives of the beneficiaries, and the net income was to be paid to them during their respective lives in equal shares. The trust deed was accepted in June, 1915. Augusta Dickel died September 16, 1916, or seven days after the passage of the Estate Tax Act, supra. Under the provisions of that act, according to certain percentages of the value of the net estate, a tax was to be imposed upon the transfer of the net estate of every decedent dying after the passage of the act, to the extent "(b) of any interest therein of which the decedent has at any time made a transfer or with respect to which he has created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth." In support of the contention that the tax was lawfully imposed, it was argued that the words "at any time" should be given a broad construction, and that by so construing them the statute was applicable although it might have a retroactive effect. The Supreme Court rejected the argument, holding that the statute should not be construed to apply to transactions completed when the act became a law.

Lynch v. Congdon (C. C. A.) 1 F.(2d) 133, is close to the case before us. There, in 1913, banks issued certificates of deposit payable to the order of Chester A. and Clara B. Congdon, or either of them, or both, or the survivor. Chester Congdon died in November, 1916, after the passage of the Estate Tax Act. Clara Congdon, claiming to be the owner of the funds evidenced by the certificates of deposit, presented them to the banks and received the amounts. The Commissioner of Internal Revenue held that the aggregate amount of the certificates should be added to the value of the decedent's gross estate for the purpose of taxation. Payment was made under protest, and suit was brought to recover the amount paid. Reliance was put upon the argument that the tax was not upon the transfer of the property included in the gross estate, but upon the cessation of the decedent's interest in the certificates of deposit; but the court held that such a theory was foreclosed by the decision in Shwab v. Doyle, supra. Judge Kenyon said: "The status of Clara B. Congdon, the wife, and her right in the joint deposits, were fixed before the passage of the Tax Act by the Congress. * * * The arrangement gave to her a present joint

ownership of the funds represented by the certificates, and the right of sole ownership if she survived him. This transaction was complete before the passage of the act. Unless the act providing for such tax is retrospective in its operation the tax assessed and collected was invalid."

Knox v. McElligott, 258 U. S. 546, 42 S. Ct. 396, 66 L. Ed. 760, was cited. There decedent Kissam in 1912 conveyed to Knox who reconveyed to Kissam and wife as joint tenants. In 1917 Kissam died, leaving Mrs. Kissam sole beneficiary under his will. On December 7, 1917, which was after the passage of the Tax Act, she as executrix and Knox as executor, in making a return of the federal estate tax on the entire estate of Kissam, included the value of one-half of the jointly owned property which was owned and enjoyed by the decedent, but did not include the value of the one-half of the jointly owned property which had been owned and enjoyed by Mrs. Kissam since the creation of the joint estate in 1912. The Commissioner of Internal Revenue added to the estate the one-half interest of the value of the estate and assessed an additional tax thereon. In litigation that followed, the executors contended that the assessment was void as to half of the joint property which vested in Mrs. Kissam before the passage of the Act of September 8, 1916, as amended. The District Court held that while, under section 201, the tax was imposed upon the "transfer" of the net estate of every decedent dying after the passage of the act, that language pertained to estates thereafter created, and not to then-existing vested property. This view was affirmed by the Supreme Court upon the authority of Shwab v. Doyle, supra; Munroe v. United States (D. C.) 10 F.(2d) 230.

Our judgment is that the will gave to each tenant a present joint ownership in the whole property described in the will; that there was no change of title, and no transfer by reason of the death of Annie Ames.

The judgment is affirmed.