## TYLER et al. v. UNITED STATES.

District Court, D. Maryland. October 19, 1928.

No. 3240.

J. E. Tyler, Jr., of Baltimore, Md., and Frank S. Bright and Lowndes C. Connally, both of Washington, D. C., for plaintiffs.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., and C. M. Charest, General Counsel, Bureau of Internal Revenue, and J. D. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for the United States.

WILLIAM C. COLEMAN, District Judge. There are two questions presented by this proceeding: (1) Whether the value of shares of stock, acquired by a decedent and his wife as tenants by the entireties subsequent to the effective date of the Revenue Act of 1916 (39 Stat. 756) is to be included in the gross estate of such decedent for estate tax purposes under the provisions of that act; and (2), if so, whether such inclusion is constitutional.

The following facts appear from the statement which, by agreement, has been stipulated in the case: James E. Tyler, a resident of Baltimore, Md., died there intestate on May 7, 1918. In due course, a return was made for federal estate tax purposes and a tax of $2,062.45 was paid upon an estate of $76,-561.24. Thereafter, following a review of the return by the Commissioner of Internal Revenue, other items were included in the estate's inventory, increasing the net estate to $207,-454.60, upon which an additional tax of $6,-384.83 was levied and paid. In this revised inventory, the Commissioner included 349 shares of the Kimball-Tyler Company, a West Virginia corporation, standing in the names of the deceased and his wife as tenants by the entireties. The stock had previously stood in the name of the deceased alone, but in November, 1917, it had been transferred by him as above. The plaintiffs, administrators of Mr. Tyler's estate, now contend that the inclusion of this stock as part of the gross

estate of Mr. Tyler and the resulting tax thereon, were improper, and that they are therefore entitled to a tax refund which, as is stipulated, aggregates $3,337.67, with 6 per cent. interest from June 14, 1921, to the date of judgment. The basis of plaintiffs' contention is (1) that Congress, by section 202 (c) of the Revenue Act of September 8, 1916, c. 463 (39 Stat. 777), did not intend to tax the interest of a decedent as a tenant by the entireties; and (2) that, if Congress did so intend, this section is in violation of the Fifth Amendment and also of article 1, § 2, cl. 3, and section 9, cl. 4, of the Federal Constitution.

The pertinent provisions of the act are section 202 (c) above referred to, and section 201, which read as follows:

"Sec. 201. That a tax (hereinafter in this title referred to as the tax), equal to the following percentages of the value of the net estate, to be determined as provided in section two hundred and three, is hereby imposed upon *the transfer* of the net estate of every decedent dying after the passage of this Act, whether a *resident or nonresident* of the United States. * * *

"Sec. 202. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

* * * * * * * * *

"(c) To the extent of the interest therein held jointly *or as tenants in the entirety* by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent." (Italics inserted.)

Considering the first question, namely, is the interest of tenants by the entireties embraced within the language of the foregoing provisions, the court feels that there is no basis whatsoever on which to argue that it is not. It is true that this peculiar form of tenancy, the characteristics of which are hereinafter fully analyzed, is generally described in the law as one "by the entirety" or "by the entireties," and not "in the entirety," but this is a distinction merely of phraseology and immaterial in the face of the obvious intent of section 201 and section 202 (c). The creation of the tenancy does not depend upon the words employed. Brewer v. Bowersox, 92 Md. 567, 48 A. 1060; Safe Deposit & Trust Co. v. Tait (D. C.) 295 F. 429. Furthermore, the word "entirety" or

"entireties" is unknown in the law, when speaking of tenancies, except in relation to estates held by husband and wife. Thus, to place upon the language of the statute any other meaning than that such a tenancy held by a decedent and his wife was intended to be included, would be to say that Congress is not to be presumed to have used words in the only sense in which they are ever used. It is significant that in the 1924 and 1926 amendments to the act (26 USCA § 1094) the words "any other person" are changed to "spouse"—in short, a recognition of what has just been said. Where words upon their face are not ambiguous, it is not permissible to seek elsewhere for the will of the legislators. United States v. Goldenberg, 168 U. S. 95, 18 S. Ct. 3, 42 L. Ed. 394; Caminetti v. U. S., 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Thompson v. U. S., 246 U. S. 547, 38 S. Ct. 349, 62 L. Ed. 876. It is true that the Court of Claims in Blount v. U. S., 59 Ct. Cl. 328, involving a tenancy by the entireties in the District of Columbia, has expressed a very definite doubt as to the correctness of this construction—a case where, however, it was not necessary for the court to decide the question, because the court found that, inasmuch as the tenancy, unlike that in the present case, had been created prior to the effective date of the Revenue Act of 1916, since that act was not retroactive, the value of such interest should not be included in the gross estate of the decedent. The dictum of the court on the precise point here at issue is as follows (page 347 of 59 Ct. Cl.):

" * * * We think it doubtful whether subdivision (c) of section 202 contemplates estates by the entirety in their technical sense. It speaks of an interest held jointly, or as tenant in the entirety by the decedent, 'and any other person.' Only an estate held by the husband and wife could be held by the entirety. It seems to us this language applies to an interest that passes as part of the estate; that is, an estate held jointly or per my et per tout, by the moiety and by the whole."

Although the Blount Case was appealed to the Supreme Court, the appeal was dismissed on motion of the government. 273 U. S. 769, 47 S. Ct. 20, 71 L. Ed. 883. This precise question appears never to have been before the courts in any other reported case, but has been before the Board of Tax Appeals, with respect to tenancies by the entireties in Maryland, and also in Missouri, New York, and Pennsylvania, and in each

instance the dictum of the Blount Case was followed. Appeal of Susie M. Root, 5 B. T. A. 696; Appeal of James C. Murphy, 5 B. T. A. 952; Appeal of George R. Dyer, 5 B. T. A. 711; and Appeal of Provident Trust Co., 5 B. T. A. 1004.

We now turn to the second contention made by the administrators, namely, that, if the act is to be construed as embracing estates by the entireties, then it is unconstitutional. It is asserted that it is unconstitutional because (1) it is a direct tax upon property in violation of section 2, cl. 3, and section 9, cl. 4, of article 1, of the Federal Constitution, which prohibit any direct tax unless apportioned among the several states according to population; and because (2) it takes property without due process of law in violation of the Fifth Amendment to the Constitution, in that, by including tenants by the entireties, the act provides for measuring the tax upon a decedent's estate by property which belongs to another, namely, to the surviving spouse, and for this reason is arbitrary and capricious. The pertinent provisions of the act have been quoted in the first part of this opinion.

■ It is important to note at the outset that this Act of September 8, 1916, c. 463, tit. 2, § 201 et seq., has been before the Supreme Court, and the constitutionality of its fundamental provisions and scheme of taxation upheld, the court declaring that the estate tax thereby imposed is an indirect tax on the transfer of the net estate of every decedent, and as such does not require apportionment, nor is it an unconstitutional interference with the rights of the states in regulating descent and distribution. N. Y. Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660. In other words, the court merely affirmed what it had previously announced that Congress may constitutionally levy excise taxes upon the transmission of property at death. Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969. In the Eisner Case, however, the question before the court involved a construction of the meaning of "charges against the estate" deductible under section 203 of the act, and the question now before this court, namely, the validity of the attempt to include estates by the entireties in a decedent's gross estate as provided in section 202(c), was not involved. Since a statute may be in part constitutional and in part unconstitutional, if the parts are not dependent upon each other, a consideration of this precise question is not precluded by anything which the Supreme Court has said with respect to other aspects of this particular statute. Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 635, 15 S. Ct. 912, 39 L. Ed. 1108; Lewellyn v. Frick, 268 U. S. 238, 251, 252, 45 S. Ct. 487, 69 L. Ed. 934.

Taking up the first constitutional objection that is here raised with respect to the inclusion of tenants by the entireties, as part of the gross estate, in computing the tax, namely, that such cannot be done without apportionment because to tax such estates results in a direct tax, the basis of this argument is that property held by the entireties does not pass at death, as by inheritance, the survivor taking nothing which he or she did not have before, and that therefore a tax thereon is a direct tax, in that it is laid upon the ownership of the property and not upon any transfer of rights acquired or passing at death.

■ In order to meet this argument, it is necessary at the outset to understand the exact nature of a tenancy by the entireties as such an estate is understood by the law of Maryland, for the construction which the Maryland courts give to such tenancy is binding upon this court in this proceeding. Clarke v. Clarke, 178 U. S. 186, 20 S. Ct. 873, 44 L. Ed. 1028.

■ Tenancies by the entireties are firmly established under the law of Maryland. The Maryland Court of Appeals, in the case of Marburg v. Cole, 49 Md. 402, at 411, 33 Am. Rep. 266, thus explains the history of these estates which Maryland inherited as part of the common law of England:

"By the common law of England, which is the law of this State, except where it has been changed or modified by statute, a conveyance to husband and wife does not constitute them joint tenants, nor are they tenants in common. They are, in the contemplation of the common law, but one person, and hence they take, not by moieties, but the entirety. They are each seized of the entirety, and the survivor takes the whole. As stated by Blackstone, 'husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seized of the entirety, per tout, et non per my; the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor.' 2 Black Com. 182. This has been the doctrine of the common law from an early period of its history, for we find the principle as stated by Blackstone laid down in Littleton's Tenures, sec. 291, from whence it has been almost literally transcribed by all subsequent writers on estates. Co. Litt., 187; 2 Cruise Dig.,

492; 1 Prest. Est., 131–2; 4 Kent's Com., 362; 1 Washb. R. Pro. (4th Ed.) 672, and the authorities there cited."

Again, in a later case, the Maryland Court of Appeals explained the peculiar nature of such estates, as follows (pages 572, 573, of 92 Md. [48 A. 1062]):

"It is not because a conveyance or gift is made to husband and wife as joint-tenants that the estate by entireties arises, but it is because a conveyance or gift is made to two persons who are husband and wife; and since in the contemplation of the common law they are but one person, they take and can only take, not by moieties, but the entirety. The marital relation with its common law unity of two persons in one, gives rise to this peculiar estate when a conveyance or gift is made to them without restrictive or qualifying words; and they hold as tenants by the entirety, not because they are declared to so hold, but because they are husband and wife. This estate with its incidents continues in Maryland as it existed at the common law. McCubbin v. Stanford, 85 Md. 390 [37 A. 214, 60 Am. St. Rep. 329]. It differs materially from all other tenancies. The right of survivorship, which is one of its chief incidents, cannot be destroyed except by the joint-act of the two; and upon the death of either the other succeeds to the entire property or fund. 2 Bl. Com., 182; Coke, Litt., 187A; Green v. King, 2 W. Bl. 1211; Hanan [Hannan] v. Towers, 3 Har. & J. 147 [5 Am. Dec. 427]." Brewer v. Bowersox, 92 Md. 567, 572, 573, 48 A. 1060, 1062.

The common law controlling this character of estate has never been changed in Maryland. This is true in a majority of the states. In others, as in England, it is regarded as abolished by Married Women's Property Acts. See Tiffany on Real Property, vol. 1, § 194, for a compilation of the law in the various jurisdictions. As late as 1918, in the case of Ades v. Caplin, 132 Md. 66, at 69, 103 A. 94, 95 (L. R. A. 1918D, 276), we find the Maryland Court of Appeals again defining tenants by the entireties as follows:

"Tenants by the entireties are, in the contemplation of the common law, which is the law of this State, but one person, and hence they take, not by moieties, but the entirety. They are each seized of the entirety, and the survivor takes the whole. Marburg v. Cole, 49 Md. 411 [33 Am. Rep. 266]."

See, also, McCubbin v. Stanford, 85 Md. 378, 37 A. 214, 60 Am. St. Rep. 329; Baker v. Baker, 123 Md. 32, 90 A. 776. In accord with these state decisions, Judge Soper has thus defined a tenancy by the entireties in

Safe Deposit & Trust Co. v. Tait, supra, page 431 of 295 F.:

"A tenancy by the entireties is created by a conveyance to husband and wife, whereupon each becomes seized and possessed of the entire estate, and after the death of one, the survivor continues to take the whole. No special form of words need be used."

As we have seen, the act imposes a tax on the transfer of the net estate of every decedent. We must therefore determine whether anything has been transferred to the surviving wife by reason of the death of the husband. Has any interest accrued to her which she did not previously have? There are two elements in every transfer of a decedent's estate: (1) Exercise of the legal power to transmit at death; and (2) the privilege of succession. Both of these elements may be made the basis of taxation. Stebbins v. Riley, 268 U. S. 137, 45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454. But the Act of 1916, now under consideration, purports to tax only the first of these elements. As was said by Chief Justice White, in Knowlton v. Moore, supra, page 57 of 178 U. S. (20 S. Ct. 754):

"Confusion of thought may arise unless it be always remembered that, fundamentally considered, it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties. The qualification of such taxes as privilege taxes, or describing them as levied on a privilege, may also produce misconception, unless the import of these words be accurately understood."

The administrators seek to prove that there has been no transfer from the husband to the wife in the present case by the analogy of dower, pointing out that a wife's dower interest in her husband's estate has been held not to be subject to an estate tax under the Revenue Act of 1918. (There is no provision relating to dower in the Act of 1916.) Hibbard v. Crooks (D. C.) 25 F.(2d) 896; Munroe v. U. S. (D. C.) 10 F.(2d) 230. In the first of these cases, the property in question was located in Missouri and in the second in Nebraska. In each case the court decided that, since by the statutes and decisions of the given state, the inchoate right of the surviving spouse became absolute by *operation of law* (that is, an inchoate right was acquired by virtue of the marriage relation and became consummated on the husband's death), any attempt to tax the value of the interest of the surviving spouse amounted to the imposition of a direct tax and therefore was unconstitutional as being

892

in violation of the apportionment provisions of the Federal Constitution. In the Hibbard Case, the court said, page 897 of 25 F.(2d):

"It will be observed that the tax imposed is 'upon the transfer of the net estate of every decedent.' The case entitled In re Rogers' Estate, 250 S. W. 576, was decided by the Supreme Court of the state of Missouri April 9, 1923. It was there held that 'the wife's interest does not pass to her by will nor by the intestate laws, but it is hers, will or no will. * * * It is a right which she has in her husband's property by virtue of the marriage relation.' It is an inchoate right, which becomes consummate upon his death. * * * According to the laws of Missouri, there existed during the marital relation an inchoate right, and such right became perfect upon the death of the husband. It was, therefore, never the property of the estate of the decedent."

In the Munroe Case, the court said, page 231 of 10 F.(2d):

"By statutes and decisions of Nebraska the interest of the surviving spouse does not come to him through the death, either by inheritance or testamentary succession, nor as distributive share in the estate, but his inchoate right becomes absolute by operation of law. And this results the same, whether, as in this case, there is a will, which purports to give him the same identical interest which he would have had without it, or whether he exercises an election to take his statutory interest outside the will. In re Sanford, 91 Neb. 752, 137 N. W. 864, 45 L. R. A. (N. S.) 236; In re Strahan, 93 Neb. 828, 142 N. W. 678."

Without passing upon, because not before the court, the precise point decided in the foregoing cases, it is sufficient to say that the law of Maryland with respect to dower is similar to that of the other states referred to. Is the analogy perfect? Are these cases controlling? Of course, the tenancy by the entireties, unlike a wife's inchoate right of dower, was not created by operation of law, but by the act of the parties themselves. There are other distinctions between the two interests. For example, whereas a court of equity has no jurisdiction, merely at a husband's request, to direct the sale of his property, free from the wife's inchoate dower, such an interest, though capable of release, not being susceptible of sale or transfer or of being divested except with the wife's consent, nevertheless, a decree may, in the discretion of the court, sometimes be passed for the sale of property owned by the husband and wife as tenants by the entirety, even though one

of them may oppose the sale. Roth v. Roth, 144 Md. 553, 125 A. 400; Masterman v. Masterman, 129 Md. 167, 98 A. 537. But fundamentally, in so far as the estate tax is applicable, are the two estates distinguishable on principle? We have described the peculiar nature of a tenancy by the entireties. Under it both the husband and wife are said to hold the entire title. When one dies, therefore, no *new* estate can be said to be conferred upon the survivor, for the death simply destroys the possibility of the decedent's survivorship. The survivor takes nothing which he or she did not have before, acquires no new title, but takes the whole by the original conveyance by which he or she was invested with the entire estate. This is the reasoning adopted in the case of Blount v. U. S., supra, which the administrators have stressed in support of their contentions, and from which it seems pertinent here to quote as follows (pages 346, 347 of 59 Ct. Cl.):

"If the estate of the husband and wife was tenancy by the entirety with all the incidents of such an estate at common law, then nothing was transferred to the wife by the husband's will or by her mere survivorship because she took the entire estate under the original grant. See Palmer v. Mansfield, 222 Mass. 263 [110 N. E. 283, L. R. A. 1916C, 677]; Matter of Lyon, 233 N. Y. 208 [135 N. E. 247]; Beihl v. Martin, 236 Pa. 519 [84 A. 953, 42 L. R. A. (N. S.) 555]. It was said in Hunt v. Blackburn, 128 U. S. 464, 469 [9 S. Ct. 125, 126 (32 L. Ed. 488)]: 'Undoubtedly, at common law, husband and wife did not take under a conveyance to them of land jointly, as tenants in common or as joint tenants, but each became seized of the entirety per tout et non per my—the consequence of which was that neither could dispose of any part without the assent of the other, but the whole remained to the survivor under the original grant.' In express terms the tax is imposed by section 201 upon 'the transfer of the net estate of every decedent.' See Woodward Case, 256 U. S. 632 [41 S. Ct. 615, 65 L. Ed. 1131]. It is an estate tax, imposed not upon the gross estate but upon the net estate transferred, and rules for the ascertainment of the amount of this net estate are prescribed. See Woodward Case, 56 Ct. Cl. 133, 150. In view of the plain language of the statute we need not consider the refinements as to 'death duties' suggested by the Government's contention. In a late case it is said that what this law taxes is not the interest to which legatees or devisees succeeded on death, but the interest of the de-

cedent which ceased by reason of his death. See Y. M. C. A. v. Davis, 264 U. S. 47 [44 S. Ct. 291, 68 L. Ed. 558]. But this does not mean that the tax is upon an estate which ceases by reason of the death. It would hardly be contended that this statute imposes a tax on an estate for life held by one at the time of his death on the theory that the tax is upon an interest which ceases by reason of the death. It was said by Mr. Justice White, in Knowlton v. Moore, 178 U. S. 41, 57 [20 S. Ct. 747, 754 (44 L. Ed. 969)]: 'Confusion of thought may arise unless it be always remembered that, fundamentally considered, it is the power to transmit or the transmission or receipt of property by death, which is the subject levied upon by all death duties.' The tax here is upon the transfer of an estate which passes from the decedent, and is not upon an estate which ceases with his death. See Knowlton v. Moore, supra; Lederer v. Northern Trust Co. [C. C. A.] 262 F. 52, 54; New York Trust Co. v. Eisner, 256 U. S. 345 [41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660]; Woodward Case, supra. It follows that the tax should not be assessed against the estate of tenants by the entirety because the wife did not take as upon a transfer from the husband at his death, but took under the original grant, his estate ceasing."

The government in its reply brief admits that, in the case of a tenancy by the entireties, there is no actual transfer upon the death of either spouse, since each owned the whole, but seeks to qualify and explain this admission by saying:

"It is equally true that in effect there accrued to the widow upon the decedent's death something which she did not have in his lifetime, namely, the unrestricted right to dispose of the whole property and give a good title thereto. The assignment which created the *estate* did not complete the transfer of the *property*. Subsequent events determined the respective interests therein. * * * In the instant case that which fixed the wife's right was the husband's death,—death completed the transfer. So that it is true, only in a highly technical sense, that nothing passed to the wife on the husband's death. The transfer thus completed by death is in the nature of a testamentary disposition. The purpose of creating an estate by the entirety is to secure the right of survivorship. That is, to direct the devolution of property at death. Therefore, when a person purchases property with his own money and transfers it to himself and his wife as tenants by the entirety, he in effect exercises the right of post mortem disposition and gives his wife the absolute title, contingent upon his death."

The court cannot agree with these last assertions, because unable to concede that anything actually devolved from the husband upon the wife at the former's death. In one sense, it is true that, upon the husband's death, the wife did acquire more than she had during his lifetime, namely, complete title in herself as sole owner as opposed to title to the whole jointly with her husband, but this is not tantamount to saying that she acquired this right *from* her husband. We must not lose sight of the clear object of the act as the Supreme Court has construed it, which is to tax the *transfer* of an estate which passes from the decedent, and is not to tax an estate which simply *ceases* with his death. As pointed out by the Court of Claims in the Blount Case, it is not logical to contend that this statute imposes a tax on an estate for life, held by a person at the time of his death, on the theory that the tax is upon an interest which ceases by reason of his death. He *transfers* nothing to the remainderman, and so it is with respect to a wife's inchoate right of dower which becomes absolute upon her husband's death. By his death nothing is actually *transferred* to her. The law itself simply consummates the inchoate right upon the husband's death.

The court is therefore forced to the conclusion that the reasoning in the decision in the Blount Case, as well as in the Hibbard and Munroe Cases, above referred to, is sound in its application to a tenancy by the entireties, and therefore should be followed. In the Nebraska case, an appeal was taken by the government to the Supreme Court, which, however, was dismissed prior to hearing. The Missouri decision was not appealed.

In a recent decision by the Circuit Court of Appeals for the Ninth Circuit, Carter v. English, 15 F.(2d) 6, the court had under consideration this same section of the Estate Tax Act in its application to a joint tenancy created under the law of California. Under that law as construed by the California courts, just as at common law, the title to joint property under a joint tenancy is held not to pass to and vest in the survivor upon the death of his cotenant, but each tenant is seized of the whole estate from the first. No change occurs in his title on the death of his cotenant, but it simply "remains to him" and comes wholly from the original grant. The court held that, under a provision in a will giving property to testator's widow and daughter as joint tenants, on the death of the widow one-half of such property was not subject to the estate tax, saying, page 7 of 15 F.(2d), that to impose such a tax is "inconsistent with the status of the right, as

defined by the California court." It is true that the joint tenancy was created before the passage of the act, and, on the authority of Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454, the court declined to give retroactive effect to the act. However, the conclusions of the court with respect to the character of the estate sought to be taxed is very persuasive, even if taken as unnecessary to the decision in the case. The court concludes its opinion with the following statement, page 8 of 15 F.(2d): "Our judgment is that the will gave to each tenant a, present joint ownership in the whole property described in the will; *that there was no change of title, and no transfer by reason of the death of Annie Ames.*" (Italics inserted.)

It is to be noted that section 202 (c) contains a proviso excepting from the operation of the tax such part of the interest included for the purpose of determining the value of the gross estate "as may be shown to have originally belonged *to such other person* and never to have belonged to the decedent." Since, as we have seen, the peculiarity of a tenancy by the entireties is that the husband and wife are each seized of the whole estate, it can scarcely be said that this proviso was intended to or does relate to such a tenancy, because the result would be to exclude entirely from this section every tenancy by the entireties. This the court feels is not a reasonable construction to be placed upon this section, in view of the fact that Congress saw fit to include the specific definition of such tenancies. The proviso obviously is intended to, and must relate to joint interests other than tenancies by the entireties as that term is uniformly understood in our law. This is confirmed by the fact that in 1924 this section was amended to read as follows, and has not been changed by any subsequent amendment:

"To the extent of the interest therein held as joint tenants by the decedent and *any other person*, or as tenants by the entirety by the decedent and *spouse*, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to *such other person* and never to have been received or acquired by the *latter* from the decedent," etc. (Italics inserted.)

In reaching this conclusion, the court is not unmindful of the elementary principle that, where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the construction which would uphold it, if the statute can be reasonably so construed. Harriman v. Interstate Commerce Comm., 211 U. S. 407, 29 S. Ct. 115, 53 L. Ed. 253; U. S. v. Delaware & Hudson Co., 213 U. S. 366, 29 S. Ct. 527, 53 L. Ed. 836. But a court is not at liberty, in order to sustain a statute, to give it a forced construction, or to read into it and to interpolate words which do not appear in the language as enacted. Such the court feels it would be doing in the present case if it should hold that the proviso in section 202 (c) vitiates entirely the inclusion of tenancies by the entireties.

The government, in support of the constitutionality of the act, points out that the federal estate tax is not restricted to property which the decedent owned at his death and which is then transferred, and refers to that provision of the law (section 202 (b) which taxes transfers made in contemplation of death; that this was done to prevent evasion and to give practical effect to the exercise of admitted power, and that, by the same reasoning, if the value of a tenancy by the entireties is not to be treated as part of the estate of the tenant who dies first, then in those states where, as in Maryland, the common-law estate of tenancy by the entireties exists as to both real and personal property, a husband and wife may cause all of their property to be transferred to themselves as tenants by the entireties and thereby enable the estate of the one dying first completely to escape estate taxes. But this is an argument based rather upon convenience than upon sound legal principles. In judicial interpretation of legislative acts, there is no place for the adage that "the wish is father to the thought." It is true, as the Supreme Court said, in Nichols v. Coolidge, 274 U. S. 531, at 542, 47 S. Ct. 710, 713 (71 L. Ed. 1184, 52 A. L. R. 1081), "undoubtedly, Congress may require that property subsequently transferred in contemplation of death be treated as part of the estate for purposes of taxation. This is necessary to prevent evasion and give practical effect to the exercise of admitted power, but the right is limited by the necessity." While from a practical point of view there is force in the government's argument, in addition to what has already been said, it is sufficient to point out that, as the statute now stands, a person, in his lifetime, has the absolute right to give any or all of his property away without being subject to the tax, provided such gift be not made in contemplation of, or intended to take effect in possession or enjoyment

at or after, death, but, if the gift be consummated through the creation of a tenancy by the entireties and in fact made with such contemplation or intention, it would be taxable just the same as though made in any other manner.

It follows that, since the effect of section 202 (c) of the act is to levy a direct tax upon the decedent's estate contrary to article 1, §§ 2 and 9, of the Constitution, that section is invalid in so far as it affects a tenancy by the entireties.

█ We .now turn to the second and last constitutional objection, namely, that the tax, in so far as it includes tenancies by the entireties, measures the tax upon the decedent's estate by property which belongs to another, namely, the surviving spouse, and for this reason is arbitrary and capricious and in violation of the due process clause of the Fifth Amendment to the Constitution. From the conclusions just reached, the court must hold that this objection is well taken, and, such being the case, there is ample authority for declaring section 202 (c) invalid on this ground as well as on the ground that it violates the other provisions of the Constitution hereinbefore named relating to direct taxation. As was said by the Supreme Court in Nichols v. Coolidge, supra, page 542 of 274 U. S. (47 S. Ct. 714) :

"This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. Brushaber v. Union Pacific R. R., 240 U. S. 1, 24 [36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713]; Barclay & Co. v. Edwards, 267 U. S. 442, 450 [45 S. Ct. 135, 348, 69 L. Ed. 703]. See, also, Knowlton v. Moore, 178 U. S. 41, 77 [20 S. Ct. 747, 44 L. Ed. 969]."

Recovery will therefore be allowed the plaintiffs in the sum of $3,337.67, together with interest at the rate of 6 per cent. per annum on said amount, from June 14, 1921, to the date of judgment.